TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00735-CV






Henry Calderon and Sylvia Calderon, Individually and As Next Friends


for Erica Calderon, Appellants



v.



Mid-Century Insurance Company of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. 96-14415-A, HONORABLE F. SCOTT MCCOWAN, JUDGE PRESIDING





 This is an appeal from a summary judgment granted in favor of appellee, Mid-Century Insurance Company of Texas in a declaratory judgment action. We will reverse the
judgment of the trial court and render judgment in favor of appellants, Henry Calderon and Sylvia
Calderon, individually and as next friends for Erica Calderon.


Background and Procedural History


 On or about September 8, 1995, while driving Brian Mientus' car around the St.
Michael's Academy parking lot, Erica Calderon hit a curb, a car, and Nicky Ornelas, who was
standing next to another car. As a result of the accident, Nicky sustained injuries. Virginia
Ibarra, Nicky's mother, brought a lawsuit individually and as next friend for Nicky, against
Brian's parents, who owned the car, Yanek and Terese Mientus, individually and as next friends
for Brian ("Mientuses"), and Henry and Sylvia Calderon, individually and as next friends for
Erica ("Calderons"), alleging various acts of negligence and negligence per se ("Ibarra lawsuit"). 
The Mientuses' insurer, State Farm Mutual Insurance Company of Texas ("State Farm"), and the
Calderons' insurer, Mid-Century Insurance Company of Texas ("Mid-Century"), brought suit
against the Calderons and Virginia Ibarra, individually and as next friend for Nicky Ornelas,
seeking a declaratory judgment that neither carrier had a duty to defend nor a duty to indemnify
the Calderons in the Ibarra lawsuit. State Farm filed a motion for partial summary judgment and
Mid-Century filed a motion for summary judgment pursuant to Tex. R. Civ. P. 166a(c). The
Calderons also filed a motion for summary judgment pursuant to Tex. R. Civ. P. 166a(c)
contending as a matter of law that State Farm and/or Mid-Century had a duty to defend them. In
their response to the motions of State Farm and Mid-Century, the Calderons objected to the
consideration of facts outside the allegations in the Ibarra lawsuit offered by Mid-Century and
State Farm.

 The trial court denied the Calderons' motion and overruled their objections, granted
State Farm's (1) motion for partial summary judgment, and granted Mid-Century's motion for
summary judgment. The trial court found as a matter of law that Mid-Century did not have a duty
to defend or indemnify the Calderons in the Ibarra lawsuit. The trial court also found as a matter
of law that Erica drove the car involved in the accident without a reasonable belief that she was
entitled to do so. 

 The Calderons appeal and argue the trial court erred in granting Mid-Century's
motion and in denying their motion. Specifically, the Calderons contend the trial court erred in
considering extrinsic evidence. They argue that Mid-Century has a duty to defend them based on 
the "eight corners" rule, which requires that the determination of a duty to defend be based solely
on the allegations in the pleadings and the language of the policy, without considering extrinsic
evidence. See Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 829 (Tex. 1997).

 Mid-Century argues that the eight corners rule does not apply and that extrinsic
evidence can be considered in determining its duty to defend. In support of its position, Mid-Century argues that: (1) where the basis for the refusal to defend is that the event giving rise to
the lawsuit is outside coverage, extrinsic evidence can be considered; and (2) because the issue in
this case is whether Erica is an insured under the policy, extrinsic evidence can be considered.


Standard of Review


 Because both parties moved for summary judgment, we must review the record to
determine whether either party proved the absence of issues of material fact and entitlement to
judgment as a matter of law. Sharp v. Morton Bldgs., Inc., 953 S.W.2d 300, 302
(Tex.App.--Austin 1997, writ denied); see Nixon v. Mr. Property Man. Co., 690 S.W.2d 546,
548-49 (Tex. 1985); S & H Mktg. Group, Inc. v. Sharp, 951 S.W.2d 265, 266 (Tex.
App.--Austin 1997, no writ). When both parties move for summary judgment, each must carry
its own burden of proof. Sharp, 953 S.W.2d at 302. Whether an insurance carrier owes a duty
to defend under an insurance policy is a question of law which the appellate court reviews de novo. 
State Farm Gen. Ins. Co. v. White, 955 S.W.2d 474, 475 (Tex. App.--Austin 1997, no pet.); E
& L Chipping Co. v. Hanover Ins. Co., 962 S.W.2d 272, 274 (Tex. App.--Beaumont 1998, no
pet.).


Duty to Defend


 The duty to defend is determined solely by the allegations in the underlying
pleadings and the language of the insurance policy. Trinity, 945 S.W.2d at 829. This principle
is frequently referred to as the "eight corners" rule. Texas Medical Liab. Trust v. Zurich Ins. Co.,
945 S.W.2d 839, 842 (Tex. App.--Austin 1997, writ denied). In determining the duty to defend,
facts in the underlying petition are taken as true, and facts outside the pleadings cannot be
considered. Houston Petroleum Co. v. Highlands Ins. Co., 830 S.W.2d 153, 155 (Tex.
App.--Houston [1st Dist.] 1990, writ denied). Whether an incident is within a policy exclusion
is also determined by the eight corners rule. E & L Chipping, 962 S.W.2d at 276. The duty to
defend is not affected by facts ascertained before the suit, developed in the process of litigation
or by the ultimate outcome of the suit. Trinity, 945 S.W.2d at 829. The allegations must be
liberally construed, with any doubt resolved in favor of coverage. National Union Fire Ins. Co.
v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997); Heydon Newport Chem.
Corp. v. Southern Gen. Ins. Co., 387 S.W.2d 22, 26 (Tex. 1965); E & L Chipping, 962 S.W.2d
at 274. If the allegations in the underlying petition are potentially within policy coverage, then
the insurer has a duty to defend. Butler & Binion v. Hartford Lloyds Inc., 957 S.W.2d 566, 568
(Tex. App.--Houston [14th Dist.] 1995, writ denied).

 The Ibarras' third amended petition alleges that, "ERICA CALDERON, with
permission from BRIAN MIENTUS, got into the 1995 green Volkswagen GTI . . . ." Further,
the Ibarras allege that "ERICA CALDERON, with permission from BRIAN MIENTUS, drove
around the parking lot . . . lost control of the motor vehicle, struck a curb, hit NICKY
ORNELAS, and then hit a 1994 White Probe SE . . . ." The Ibarras further allege that "ERICA
CALDERON was driving said vehicle with reasonable belief from Defendant BRIAN MIENTUS
that she was entitled to do so."

 Under its automobile liability policy issued to Henry Calderon, Mid-Century must
defend suits arising from bodily injury or property damage for which any covered person (2) becomes
legally responsible because of an auto accident. The policy excludes from coverage any person
using a vehicle without a reasonable belief that that person is entitled to do so.

 In its first argument, Mid-Century argues that because it refused to defend on the
basis that the facts giving rise to the occurrence were outside coverage, the trial court can consider
extrinsic evidence in deciding the case. Mid-Century asserts that, according to the extrinsic
evidence, Erica did not have permission to drive; therefore the policy expressly excludes coverage. 
Mid-Century bases its position on three cases.

 In International Service Insurance Company v. Boll, the insurance policy expressly
excluded from coverage damages resulting from the operation of an automobile driven by Roy
Hamilton Boll, without identifying Roy's relationship to Bastiaan Boll, the insured. The petition
in the underlying damages lawsuit alleged the car was driven by the insured's son, without naming
the son. It was "stipulated or undisputed" that at the time of the accident, Roy Hamilton Boll, the
insured's only son, was driving. 392 S.W.2d 158, 160-61 (Tex. Civ. App.--Houston 1965, writ
ref'd n.r.e.). Because the insured knew he had only one son and knew the policy excluded Roy
Hamilton from coverage, the court considered both the extrinsic evidence--the stipulation which
removed the claim from coverage--and the petition to conclude there was no duty to defend. Id.
at 161.

 Cook v. Ohio Casualty Insurance Company involved a policy which excluded from
coverage damages resulting from Ms. Cook's operation of her mother's car. 418 S.W.2d 712,
714 (Tex. Civ. App.--Texarkana 1967, no writ). The parties stipulated that Ms. Cook was
driving her mother's car at the time of the accident. Id. Relying on Boll, the court concluded that
with coverage issues, "known or ascertainable facts" may be considered. Id. at 715-16. The
court found that there was no duty to defend. Id.

 Finally, Mid-Century cites Gonzales v. American States Insurance Company, 628
S.W.2d 184 (Tex. App.--Corpus Christi 1982, no writ). In Gonzales, the plaintiff in the
underlying lawsuit sustained injuries from an ice auger that he alleged was owned by Gonzales. 
Id. at 187. American States refused to defend, contending that the incident came within the
completed operations hazard exclusion of the policy, which applied only to operations not to
ownership. Thus, the allegation of ownership negated the application of the completed operations
hazard exclusion. Citing Boll and Cook, the court opined that if the insurer refused to defend
because the events giving rise to the suit were outside the policy's coverage, facts extrinsic to the
plaintiff's petition may be used to determine the duty to defend. Id. at 187. According to the
court, even though the allegation of ownership in the plaintiff's petition may not be true, it clearly
brought the claim within coverage. The court, however, refused to consider extrinsic evidence
which contradicted the allegation of ownership as contained in the plaintiff's petition, and held that
American States had a duty to defend. Id.

 We conclude that the cases cited by Mid-Century are distinguishable. Boll and
Cook both involve fundamental coverage issues--whether the property or the individual were
covered under the policy. See Tri-Coastal Contractors, Inc. v. Hartford Underwriters Ins. Co.,
No. 01-97-00618-CV, slip op. at 4, n.1 (Tex. App.--Houston [1st Dist.], October 29, 1998, no
pet. h.). In each case, the policy contained an express exclusion; moreover, each involved
stipulated or undisputed facts which excluded the claims from coverage. Although the court in
Gonzales identified a scenario in which extrinsic evidence might be considered, it held that
extrinsic evidence which contradicted the allegations in the plaintiff's petition could not be
considered.

 Under its second argument, Mid-Century contends that extrinsic evidence may be
considered in this case because the issue is whether Erica is an insured. Mid-Century argues that
because Erica drove without permission, she is not an insured under the policy. This Court has
recently considered a similar issue and applied the eight corners rule. See Texas Medical Liab.
Trust, 945 S.W.2d at 842.

 In Texas Medical Liability Trust, physicians and their insurance carriers claimed
they were additional insureds under vendor's endorsements of insurance policies issued by Zurich. 
The physicians were sued for injuries resulting from silicone breast implants and requested Zurich
to defend them. Id. at 841. Zurich's duty to defend depended on the physicians qualifying as
additional insureds. According to the policy provisions, an individual would qualify as a vendor
if the individual sold the implants in the regular course of the vendor's business. The physicians
were not in the business of selling implants; rather, they were in the business of selling medical
services. This Court concluded that because the physicians did not sell the implants in the regular
course of business, and because the petitions failed to allege that the physicians sold the implants
in the regular course of business, the physicians were not "vendors" and Zurich did not have a
duty to defend. Id. at 843.

 Mid-Century cites Blue Ridge Insurance Company v. Hanover Insurance Company,
748 F. Supp. 470 (N.D. Tex. 1990), which involved the status of a driver as an insured under an
insurance policy. The undisputed extrinsic evidence established that the driver was not an insured. 
Relying on Gonzales, the court considered the extrinsic evidence and concluded there was no duty
to defend. Like Cook and Boll, Blue Ridge involved undisputed facts which excluded the claim
from the policy. As stated earlier, we are not persuaded by Gonzales.

 We hold that the eight corners rule applies in deciding Mid-Century's duty to
defend and that extrinsic evidence cannot be considered. We must take the allegations in the
Ibarra petition as true. The Ibarras alleged that Erica had permission to drive Brian's car, a fact
Mid-Century and State Farm dispute. Nevertheless, taken as true, the allegation negates the
exclusionary provision cited by Mid-Century. As the supreme court has held, the duty to defend
is not affected by the facts ascertained before, during, or after the conclusion of the underlying
lawsuit. Trinity, 945 S.W.2d at 829. The duty to defend does not depend on what the facts are;
it depends only on what the facts are alleged to be. Argonaut Southwest Ins. Co. v. Maupin, 500
S.W.2d 633, 636 (Tex. 1973). We conclude that the Ibarra petition alleges facts within the scope
of coverage of the Mid-Century policy. Accordingly, we conclude as a matter of law that Mid-Century has a duty to defend the Calderons in the Ibarra lawsuit.


Duty to Indemnify


 The Calderons also challenge the trial court's order which states that Mid-Century
has no duty to indemnify them in the Ibarra lawsuit. An insurer's duty to indemnify is separate
and distinct from its duty to defend. Trinity, 945 S.W.2d at 821-22; E & L Chipping, 962 S.W.2d
at 274. An insurer may have a duty to defend but eventually, no duty to indemnify. Farmers
Texas Co. Mut. Ins. v. Griffin, 955 S.W.2d 81, 82 (Tex. 1997); E & L Chipping, 962 S.W.2d at
274. The duty to defend is broader than the duty to indemnify. E & L Chipping, 962 S.W.2d at
274. Unlike the duty to defend, the duty to indemnify is not based upon the pleadings, but is
based upon the actual facts which underlie the result in the liability. American Alliance Ins. Co.
v. Frito-Lay, Inc., 788 S.W.2d 152, 154 (Tex. App.--Dallas 1990, writ dism'd).

 Because we have held that Mid-Century has a duty to defend, the rule in Farmers,
which Mid-Century contends is controlling, does not apply. (3) The outcome of the Ibarra lawsuit
will determine whether Mid-Century has a duty to indemnify. A determination on the duty to
indemnify prior to the Ibarra trial is premature. Accordingly, the trial court erred in concluding
Mid-Century had no duty to indemnify.


Conclusion


 We sustain the Calderons' issue on appeal. We conclude that the trial court erred
in overruling the Calderons' objections to the consideration of extrinsic evidence, and in 
considering extrinsic evidence beyond the allegations in the Ibarra lawsuit and the Mid-Century
insurance policy. Therefore, we conclude that the trial court erred in granting Mid-Century's
motion for summary judgment and in denying the Calderons' motion for summary judgment. We
hold that Mid-Century has a duty to defend the Calderons in the Ibarra lawsuit. Accordingly, we
reverse the summary judgment granted in favor of Mid-Century and render judgment for the
Calderons on the issue of duty to defend. Mid-Century's duty to indemnify, if any, will be
determined by the outcome of Ibarra lawsuit.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Jones and Yeakel

Reversed and Rendered

Filed: December 29, 1998

Do Not Publish

1. After granting the summary judgment motions, the trial court severed State Farm's action
from Mid-Century's action, making a final, appealable judgment.
2. "Covered person" means the named insured or any family member for the ownership,
maintenance or use of any auto or trailer. "Family member" means a person who is a resident of
the named insured's household and related by blood, marriage or adoption, including a ward or
foster child.
3. The Texas Supreme Court has recently held that the duty to indemnify is justiciable before
the insured's liability is determined in the liability lawsuit, "when the insurer has no duty to
defend and the same reasons that negate the duty to defend likewise negate any possibility the
insurer will ever have a duty to indemnify." Farmers Texas Co. Mut. Ins. v. Griffin, 955 S.W.2d
81, 84 (Tex. 1997).


.

 We hold that the eight corners rule applies in deciding Mid-Century's duty to
defend and that extrinsic evidence cannot be considered. We must take the allegations in the
Ibarra petition as true. The Ibarras alleged that Erica had permission to drive Brian's car, a fact
Mid-Century and State Farm dispute. Nevertheless, taken as true, the allegation negates the
exclusionary provision cited by Mid-Century. As the supreme court has held, the duty to defend
is not affected by the facts ascertained before, during, or after the conclusion of the underlying
lawsuit. Trinity, 945 S.W.2d at 829. The duty to defend does not depend on what the facts are;
it depends only on what the facts are alleged to be. Argonaut Southwest Ins. Co. v. Maupin, 500
S.W.2d 633, 636 (Tex. 1973). We conclude that the Ibarra petition alleges facts within the scope
of coverage of the Mid-Century policy. Accordingly, we conclude as a matter of law that Mid-Century has a duty to defend the Calderons in the Ibarra lawsuit.


Duty to Indemnify


 The Calderons also challenge the trial court's order which states that Mid-Century
has no duty to indemnify them in the Ibarra lawsuit. An insurer's duty to indemnify is separate
and distinct from its duty to defend. Trinity, 945 S.W.2d at 821-22; E & L Chipping, 962 S.W.2d
at 274. An insurer may have a duty to defend but eventually, no duty to indemnify. Farmers
Texas Co. Mut. Ins. v. Griffin, 955 S.W.2d 81, 82 (Tex. 1997); E & L Chipping, 962 S.W.2d at
274. The duty to defend is broader than the duty to indemnify. E & L Chipping, 962 S.W.2d at
274. Unlike the duty to defend, the duty to indemnify is not based upon the pleadings, but is
based upon the actual facts which underlie the result in the liability. American Alliance Ins. Co.
v. Frito-Lay, Inc., 788 S.W.2d 152, 154 (Tex. App.--Dallas 1990, writ dism'd).

 Because we have held that Mid-Century has a duty to defend, the rule in Farmers,
which Mid-Century contends is controlling, does not apply. (3) The outcome of the Ibarra lawsuit
will determine whether Mid-Century has a duty to indemnify. A determination on the duty to
indemnify prior to the Ibarra trial is premature. Accordingly, the trial court erred in concluding
Mid-Century had no duty to indemnify.


Conclusion


 We sustain the Calderons' issue on appeal. We conclude that the trial court erred
in overruling the Calderons' objections to the consideration of extrinsic evidence, and in 
considering extrinsic evidence beyond the allegations in the Ibarra lawsuit and the Mid-Century
insurance policy. Therefore, we conclude that the trial court erred in granting Mid-Century's
motion for summary judgment and in denying the Calderons' motion for summary judgment. We
hold that Mid-Century has a duty to defend the Calderons in the Ibarra lawsuit. Accordingly, we
reverse the summary judgment granted in favor of Mid-Century and render judgment for the
Calderons on the issue of duty to defend. Mid-Century's duty to indemnify, if any, will be
determined by the outcome of Ibarra lawsuit.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Jones and Yeakel

Reversed and Rendered

Filed: December 29, 1998